UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY LASKOWSKI, individually and on behalf of all other persons similarly situated who were employed by ST. CAMILLUS HEALTH AND REHABILITATION FACILITY and/or any other entities affiliated with or controlled by ST. CAMILLUS HEALTH AND REHABILITATION FACILITY, <br><br> Plaintiff, <br><br> -against- <br><br> ST. CAMILLUS NURSING HOME COMPANY, INC. and ST. CAMILLUS RESIDENTIAL HEALTH CARE FACILITY, both d/b/a ST. CAMILLUS HEALTH AND REHABILITATION FACILITY, and any related entities, <br><br> Defendants. | Case No.: 22-cv-00799 |

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release, along with all exhibits annexed hereto, ("Agreement") is entered into by and between Plaintiff Tammy Laskowski ("Named Plaintiff" or "Laskowski") on behalf of herself and the members of the "Settlement Class" (as hereinafter defined) and Defendants ST. CAMILLUS NURSING HOME COMPANY, INC. and ST. CAMILLUS RESIDENTIAL HEALTH CARE FACILITY, both d/b/a ST. CAMILLUS HEALTH AND REHABILITATION FACILITY (collectively "Defendants," or "St. Camillus", and together with the Named Plaintiff, the "Parties").

### RECITALS AND BACKGROUND

A.      Named Plaintiffs filed a Class Action Complaint, which is now pending in the United States District Court, Northern District of New York (the "Court"), designated as Case No. 22-cv-00799 (the "Action").

B.      Defendants have defended and intend to vigorously contest each and every claim in the Action, deny all material allegations of the Action, as to which Defendants allege numerous meritorious defenses. Defendants, without admitting any wrongdoing or liability, nevertheless have agreed to enter into this Agreement to avoid further expense, inconvenience and the distraction of burdensome and protracted litigation, and to be completely free of any further controversy with respect to the claims that were asserted or could have been asserted in, or relate in any way whatsoever to the Action.

C.      Virginia & Ambinder, LLP and Gattuso & Ciotoli, PLLC ("Plaintiffs' Counsel") analyzed and evaluated the merits of the claims made against Defendants and the impact of this Agreement on Named Plaintiff and Settlement Class Members and is satisfied that the terms and conditions of this Agreement are fair, reasonable and adequate and that this Agreement is in the

best interest of the Named Plaintiff and Settlement Class Members.

D.  The parties, by and through their respective counsel, have engaged in extensive settlement discussions, including mediation before Martin F. Scheinman, Esq, a well respected mediator in the wage and hour domain. Named Plaintiff, the Settlement Class, and Defendants – subject to the approval of the Court – have elected to settle the Action pursuant to the terms set forth in this Agreement, which shall be submitted to the Court for approval through the mechanisms set forth below.

NOW THEREFORE, in consideration of the mutual covenants and promises set forth in this Agreement, as well as the good and valuable consideration provided for herein, the Parties agree to a full and complete settlement of the Action on the following terms and conditions:

1. **DEFINITIONS**

The defined terms set forth in this Agreement have the meanings ascribed to them below.

1.1  **Agreement.** "Agreement" means this Settlement Agreement and Release.

1.2  **Authorized Claimant.** "Authorized Claimant" means the Named Plaintiff, a Settlement Class Member or the authorized legal representative of such member, who timely files a completed Claim Form, and a completed W-9 Form, and who is therefore entitled to receive a Settlement Check. The Named Plaintiff is deemed an Authorized Claimant upon execution of this Agreement and does not need to file a Claim Form.

1.3  **Bar Date.** "Bar Date" means the date by which any Settlement Class Member who wishes to qualify as an Authorized Claimant must file a Claim Form, except as otherwise provided herein. Subject to the Court's approval, the Bar Date shall be sixty (60) days after the initial mailing of Notice by the Settlement Administrator.

1.4  **Claim Form.** "Claim Form" means the form, a copy of which is attached to the Notice of Proposed Settlement, that Settlement Class Members must sign and return post-marked by the Bar Date. The Claim Form must be filed with the Settlement Claims Administrator for a Settlement Class Member to be eligible for a Settlement Check.

1.5  **Claims Made Basis.** "Claims Made Basis" refers to the structure of this settlement where only participating class members who affirmatively opt-in will be entitled to and receive payment. Any unclaimed funds will not be automatically distributed to all class members, but must revert to Defendant.

1.6  **Class Counsel.** "Class Counsel" or "Plaintiffs' Counsel" means LaDonna Lusher and Alanna Sakovitz, Virginia & Ambinder, LLP, 40 Broad Street, 7th Floor, New York, New York 10004; Frank S. Gattuso, Gattuso & Ciotoli, PLLC, 7030 Genesee Street, Fayetteville, NY 13066.

1.7  **Class List.** "Class List" means a list in electronic format, preferably in Excel, that includes the names (first and last), last known mailing addresses, email addresses, dates of

employment(s) and social security numbers (for skip trace purposes only) for each Settlement Class Member, provided by Defendant to Class Counsel and the Settlement Claims Administrator.

1.8   **Costs and Fees.** "Costs and Fees" means Plaintiffs' Counsels' attorneys' fees, costs, and expenses ($700,000.00) of the Total Settlement Fund.

1.9   **Court.** "Court" means the United States District Court, Northern District of New York.

1.10  **Days.** "Days" means business days if the specified number is ten (10) or less, and calendar days if the specified number is greater than ten (10).

1.11  **Defendants.** "Defendants" means ST. CAMILLUS NURSING HOME COMPANY, INC. and ST. CAMILLUS RESIDENTIAL HEALTH CARE FACILITY, both d/b/a ST. CAMILLUS HEALTH AND REHABILITATION FACILITY.

1.12  **Defendants' Counsel.** "Defendants' Counsel" means Michael J. Murphy and Madeline D. Stoklosa, Barclay Damon LLP, 80 State Street, Albany, NY 12207.

1.13  **Fairness Hearing.** "Fairness Hearing" means the hearing before the Court relating to the Application for Final Approval.

1.14  **Final Order.** "Final Order" means the Order entered by the Court after the Fairness Hearing, approving the terms and conditions of this Agreement, authorizing distribution of the Settlement Checks and Service Award, approving distribution of Costs and Fees, Settlement Administrator's Costs and Fees, and dismissing the Action with prejudice.

1.15  **Final Effective Date.** Provided no appeal is timely filed, the "Final Effective Date" means thirty (30) days after the Court has entered a Final Order. If such an appeal is timely filed, the latest of the following, if applicable, becomes the Final Effective Date: (1) any appeal from the Final Order has been finally dismissed; (2) the Final Order has been affirmed on appeal in a form substantially identical to the form of the Final Order entered by the Court; (3) the time to petition for review with respect to any appellate decision affirming the Final Order has expired; and (4) if a petition for review of an appellate decision is filed, the petition has been denied or dismissed, or, if granted, has resulted in affirmance of the Final Order in a form entered by the Court.

1.16  **Final Settlement Amount.** "Final Settlement Amount" means the sum of the Net Settlement Fund plus all Court-approved Costs and Fees, Settlement Administrator's Costs and Fees and Service Award.

1.17  **Individual Gross Amount.** "Individual Gross Amount" means the amount allocated to each individual Authorized Claimant pursuant to Section 6.1(A) prior to any deduction for tax purposes.

1.18  **Individual Net Amount.** "Individual Net Amount" means the amount paid to the individual Authorized Claimants after proper taxes are removed pursuant to Section 6.4.

1.19 **Net Settlement Fund.** "Net Settlement Fund" means the aggregate balance to be distributed to all Authorized Claimants after the deduction of Costs and Fees, Settlement Administrator's Costs and Fees, and Service Award.

1.20 **Notice or Notices.** "Notice" or "Notices" means the Court-approved Notice of Proposed Settlement of Class Action Lawsuit. The Settlement Administrator shall effectuate publication of the Notice and Claim Form by e-mail and USPS First Class Mail.

1.21 **Objection.** "Objection" means a written statement that: (1) clearly identifies the written statement as an objection, such as "I object to the settlement in the St. Camillus wage case"; (2) contains all reasons for the objection; (3) contains the Objector's name, address, and telephone number; and (4) is signed by the Objector.

1.22 **Objector.** "Objector" means an individual Authorized Claimant who properly files an objection to this Agreement.

1.23 **Opt-Out Statement.** "Opt-out Statement" means a written statement that: (1) unconditionally states a Settlement Class Member's intention to opt out, such as "I opt-out of the settlement in the St. Camillus wage case"; (2) includes the Settlement Class Member's name, address, and telephone number; and (3) is signed by the Settlement Class Member.

1.24 **Preliminary Approval Order.** "Preliminary Approval Order" means the Order entered by the Court: (i) preliminarily approving the terms and conditions of this Agreement; (ii) directing the manner and timing of providing Notice to the Settlement Class Members; and (iii) setting the dates and deadlines for effectuating settlement, including the Bar Date, date of the mailing of Notice, and the Fairness Hearing date.

1.25 **Qualified Settlement Fund.** "Qualified Settlement Fund" or "QSF" means the account established by the Settlement Claims Administrator for the Net Settlement Amount paid by Defendants. The QSF will be controlled by the Settlement Administrator for the purposes of retaining and distributing the Final Settlement Amount in accordance with this Agreement. Interest, if any, earned on the QSF will become part of the Net Settlement Amount.

1.26 **Released Authorized Claimant Claims.** "Released Authorized Claimant Claims" means claims that have been asserted or could have been asserted in the Complaint against Released St. Camillus, including all applicable statutory, regulatory, and/or common law claims pertaining to the payment of wages, such as minimum and overtime wages, under the Fair Labor Standards Act and New York Labor Law, and damages and/or penalties related to wage notices under the New York Labor Law, that are related to, based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in this action. This release shall be strictly limited to claims arising out of and in connection with an Authorized Claimant's employment with Defendants during the Relevant Period.

1.27 **Released Class Claims.** "Released Class Claims" means claims that have been asserted in the Complaint against Defendants, including claims for minimum and overtime wages, under the Fair Labor Standards Act and New York Labor Law, and damages and/or

penalties related to wage notices under the New York Labor Law, plus interest, damages and reasonable attorneys' fees, costs, and expenses. Class Members who opt-out of the settlement are excluded from releasing any Released Class Claims. This release shall be strictly limited to claims arising out of and in connection with a Class Member's employment with Defendants during the Relevant Period.

1.28   **Released St. Camillus.** "Released St. Camillus" means St. Camillus, along with its past, present, and future parents, subsidiaries, shareholders, insurers, officers, managers, owners, directors, employees, agents, attorneys, successors and assigns, in their individual and/or representative capacities.

1.29   **Relevant Period.** "Relevant Period" means any time between July 27, 2016 and May 28, 2024.

1.30   **Reserve Amount.** "Reserve Amount" is $35,000 that the Settlement Administrator will set aside out of the Total Settlement Amount pursuant to Section 6.5 for errors or omissions that occurred during the settlement processes of this Agreement.

1.31   **Service Award.** "Service Award" means the amount approved by the Court as a reasonable incentive award to the Named Plaintiff for representing the interests of the Settlement Class Members.

1.32   **Settlement Checks.** "Settlement Checks" means checks issued to Authorized Claimants for their Individual Net Amount.

1.33   **Settlement Administrator.** "Settlement Administrator" means Martom Solutions, Inc., which has been designated as the qualified administrator selected to mail the Notices and administer the calculation, allocation, and distribution of the QSF or perform all administrative duties pursuant to Section 2.2. Martom Solutions, Inc. will be assisted by Resolutions Economics LLC in its calculation, allocation, and distribution of the QSF or its performance of all administrative duties pursuant to Section 2.2.

1.34   **Settlement Administrator's Costs and Fees.** "Settlement Administrator's Costs and Fees" means the Settlement Administrator's costs and fees, not to exceed $75,000.00.

1.35   **Settlement Class and Settlement Class Member(s).** "Settlement Class" and/or "Settlement Class Member(s)" means: All current and former employees of St. Camillus Health and Rehabilitation Facility who worked as Licensed Practical Nurses, Nursing Assistants, Personal Care Assistants, Registered Nurses and other personal care support employees in the state of New York between July 27, 2016 and May 28, 2024.

Defendants represent that the Settlement Class is comprised of 1,130 individuals. Plaintiffs have agreed to settle this case in reliance on Defendants' representation of the Settlement Class size. Plaintiffs shall have the right to terminate this settlement in the event the actual Settlement Class size exceeds 1,130 Settlement Class Members by more than five percent (5%).

**1.36** **Total Settlement Fund.** "Total Settlement Fund" means Two Million Four Hundred Thousand Dollars ($2,400,000).

**1.37** **Updated Address.** "Updated Address" means a mail and/or email address that was updated via a standard skip trace or an updated mail and/or email address provided by the United States Postal Service or a Class Member.

**2.** **SETTLEMENT PROCEDURE AND PRELIMINARY APPROVAL**

**2.1** **Preliminary Approval Motion.**

    **A.** No later than ten days after complete execution of this Agreement, Class Counsel shall file a Motion for Preliminary Settlement Approval ("Preliminary Approval Motion"). In connection with the Preliminary Approval Motion, Class Counsel will submit to the Court: (1) the proposed Notice, (2) the proposed Claim Form, (3) the proposed Preliminary Approval Order, and (4) an executed version of this Agreement.

    **B.** In the Preliminary Approval Motion, Class Counsel shall inform the Court of the intended process to obtain a "Final Order" in accordance with the Court-approved schedule, so that at the Fairness Hearing, the Court may, among other things: (1) approve the settlement as fair, adequate and reasonable; (2) incorporate the terms of the Release, as described herein and the individual releases to be signed by the Named Plaintiff and the Opt-In Plaintiffs; (3) dismiss the Action with prejudice; (4) award Costs and Fees, including any Service Award; and (5) authorize distribution and payment to the Authorized Claimants.

    **C.** Plaintiffs shall submit a draft of their Preliminary Approval Motion to Defendants for Defendants' review at least five (5) days prior to filing. Plaintiffs will file the Preliminary Approval Motion as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement.

**2.2** **Settlement Administration.**

    **A.** Within ten (10) days after preliminary approval of this Agreement by the Court, Defendants will provide Class Counsel and the Settlement Administrator with the Class List.

    **B.** Within thirty (30) days after preliminary approval of this Agreement by the Court, the Settlement Administrator shall distribute the Notice and Claim Form to Settlement Class Members via email and United States First Class Mail, postage prepaid.

    **C.** In the event that, subsequent to the first mailing of the Notice and Claim Form and prior to the Claim Form Deadline, a Notice is returned to the Settlement Administrator with an Updated Address, the Settlement Administrator shall re-mail the Notice and Claim Form to that address within two (2) days.

> **D.** In the event that, subsequent to the first mailing of the Notice and Claim Form and prior to the Claim Form Deadline, a Notice is returned to the Settlement Administrator with no forwarding address, the Settlement Administrator shall perform a standard skip trace in an effort to ascertain the Updated Address for the Settlement Class Member in question. If an Updated Address is ascertained, the Settlement Administrator shall re-mail the Notice and Claim Form to that address within two (2) days.
>
> **E.** Additionally, the Settlement Administrator shall be responsible for: (i) preparing and mailing notice pursuant to the Class Action Fairness Act of 2005 and 28 U.S.C.A. § 1715 within 10 days of the filing of the Motion for Preliminary Approval; (ii) preparing, printing, and disseminating to Settlement Class Members the Notice and Claim Forms, including resending any Notice and Claim Form returned with a new forwarding address; (iii) copying counsel for all Parties on material correspondence; (iv) preparing, monitoring and maintaining a telephone number with phone answerers until the Final Effective Date or the termination of this Agreement whichever comes first; (v) promptly furnishing to counsel for the Parties copies of any requests for exclusion, objections, or other written or electronic communications from Settlement Class Members that the Settlement Administrator receives; (vi) receiving, retaining, and reviewing the Claim Forms submitted by Settlement Class Members; (vii) keeping track of opt/out/exclusion requests and objections, including maintaining the original mailing envelopes in which same were mailed; (viii) preparing and mailing and (ix) Settlement Checks in accordance with this Agreement and any order of the Court; (x) within five days of receipt, ascertaining current address and addressee information for each Notice and Claim Form returned as undeliverable and re-mailing of Notice and Claim Form to the current address; (xi) responding to inquiries of Settlement Class Members regarding procedures for filing objections, opt-out statements, and Claim Forms; (xii) referring to Class Counsel all inquiries by Settlement Class Members regarding matters not within the Settlement Administrator's duties specified herein; (xiii) responding to inquiries of Class Counsel and Defendants' Counsel consistent with the Settlement Administrator's duties specified herein; (xiv) promptly apprising counsel for the Parties of the activities of the Settlement Administrator; (xv) maintaining adequate records of its activities, including the dates of the mailing of Notice(s) and mailing and receipt of Claim Forms(s), returned mail and other communications and attempted written or electronic communications with Settlement Class Members or Authorized Claimants; (xvi) confirming in writing, including through a report if necessary, to Class Counsel, Defendants' Counsel, and the Court its completion of the administration of the settlement; (xvii) timely responding to communications from the Parties or their counsel; and (xviii) providing all information, documents, and, if requested, calculations necessary to determine each Claimant's share or allocation of the Settlement Fund without disclosing the identities of the Claimants; (xx) providing a weekly email during the time period between the mailing of Notice until the Fairness Hearing that includes the total number of Claimants, opt-outs or exclusions, and objections; (xxi) throughout the period of claims administration, providing reports to the Parties upon request by either Party, regarding the status of the mailing of the Notices and

Claims Forms to Settlement Class Members, the claims administration process, distribution of the Settlement Checks, or any other aspect of the claims administration process, subject to the terms of this Agreement; and (xxii) such other tasks as the Parties mutually agree. In addition, no later than thirty (30) days after the Bar Date, the Settlement Administrator by email shall certify jointly to Class Counsel and Defendants' Counsel (a) the number of Claimants who timely filed their Claim Form, (b) a list of all Settlement Class Members who filed a timely objection, (c) a list of all Settlement Class Members who requested to opt-out of the settlement at any time during the Opt-out Period, and (d) the aggregate payments to all Claimants, plus Class Counsels' attorneys' fees, costs and expenses, Settlement Administrator's fees and costs, and Service Award.

**2.3   Authorized Claimants.**

    **A.**   To be deemed an Authorized Claimant, Settlement Class Members must email, fax, or postmark the fully executed Claim Form by the Bar Date. Settlement Class Members whose notice was re-mailed in accordance with Section 2.2 (C) or (D) shall be given an additional ten (10) days after the Bar Date to submit a timely Claim Form. Settlement Class Members with documented extraordinary circumstances, such as military service or hospitalization, shall be able to submit a timely Claim Form until fifteen (15) days before the Fairness Hearing.

**2.4   Class Members who opt-out.**

    **A.**   Settlement Class Members who elect to opt-out of the settlement as set forth in this Agreement must email, fax, or postmark a written statement by the Bar Date that: (1) unconditionally states a Settlement Class Member's intention to opt-out, such as "I opt-out of the settlement in the St. Camillus wage case"; (2) includes the Settlement Class Member's name, address, and telephone number; and (3) is signed by the Settlement Class Member.

**2.5   Objectors.**

    **A.**   Any Settlement Class Member who does not submit an Opt-Out Statement and who wishes to object to the settlement as set forth in this Agreement, must email, fax, or postmark a completed Claim Form with a written objection statement to the Settlement Administrator within thirty (30) days from the mailing of the Notice. The written objection must (1) clearly identify the written statement as an objection, such as "I object to the settlement in the St. Camillus wage case"; (2) contain all reasons for the objection; (3) contain the Objector's name, address, and telephone number; and (4) be signed by the Objector.

    **B.**   After receipt from the Settlement Administrator, Class Counsel shall promptly file the date-stamped originals of any and all Objections with the Court, and the Parties may file with the Court written responses to any filed Objections no later than three (3) days before the Fairness Hearing. Any reasons not included in that written objection shall not be considered by the Court.

    **C.**    A valid Objector also has the right to appear at the Fairness Hearing either in person or through counsel retained by the Objector. An Objector who wishes to appear at the Fairness Hearing must clearly state their intention to do so in writing on their written Objection. It is in the Court's discretion whether to allow the Objector or the Objector's counsel to speak at the Fairness Hearing.

    **D.**    An Objector may withdraw their Objection at any time.

**2.6**    **Reversion.**

    **A.**    The settlement funds will be distributed to only participating class members, who affirmatively opt-in. Any settlement funds remaining will not be distributed to non-participating class members and will revert to Defendant. Non-participating class members, including the class members who opt-out or who fail to opt-in by returning a valid and effective claim form, will not receive any individual class payments unless agreed upon by the parties.

**3.**    **FAIRNESS HEARING AND FINAL JUDGMENT**

**3.1**    Not later than sixty (60) days after the Bar Date but no sooner than 15 days after the expiration of the time allotted for Defendants to exercise it rights pursuant to Section 4.2, Class Counsel shall submit a Motion for Final Approval.

**3.2**    Class Counsel will file the Motion for Final Approval as "unopposed." Defendants may not oppose such application so long as it is consistent with the terms and conditions of this Agreement. Plaintiffs agree to submit the Motion for Final Approval to Defendants for review and comments, if any, at least five (5) days prior to filing.

**3.3**    At the Fairness Hearing, the Parties shall request that the Court, among other things, (a) approve the settlement as final, fair, reasonable, adequate, and binding on all Settlement Class Members who have not timely opted out, (b) approve Costs and Fees, (c) enter judgment in accordance with this Agreement, and (d) dismiss this action with prejudice.

**4.**    **TERMINATION AND DEFAULT**

**4.1**    Either party may void this Agreement if the Court fails to preliminarily or finally approve this Agreement, or if the Court at any time alters any material term, including failing to approve the claims-made structure, or any other similar material term.

**4.2**    Defendants may void the Agreement if more than 10% of Settlement Class Members opt out of the settlement, or if the Final Settlement Amount exceeds One Million One Hundred Thousand Dollars ($1,100,000.00). To exercise this right to void the Agreement, by no later than fifteen (15) days following the receipt of the Settlement Administrator's email certifying the Class as provided in 2.2(E), Defendants must serve upon Class Counsel a written

notification of intent to void the Agreement. In the event notice is provided, the Parties will meet and confer prior to voiding of the settlement. The parties may also attend mediation with Mediator Scheinman to discuss potential resolution. The mediation shall be non-binding. If the Parties are unable to preserve this Agreement, they shall jointly notify the Settlement Administrator and the Court that the Agreement has been voided.

4.3   If this settlement is not consummated for any reason, including but not limited to a ruling by the Court declining to enter a Preliminary Approval Order or Final Order, the Parties shall first endeavor to resolve the matter jointly and in good faith with the goal of effectuating settlement. This may include seeking reconsideration of the Court's ruling, renegotiating this Agreement, or taking any other actions to address the reason settlement was not consummated. To the extent such efforts fail, the Parties may then continue to litigate the Action as though this Agreement had never been executed

4.4   **Effect of Termination or Failure to Obtain Preliminary or Final Approval.** In the event that this Agreement is not approved in its entirety by the Court, excluding modifications that the Parties determine in their reasonable and good faith judgment not to be material modifications, or in the event that the settlement set forth in this Agreement is terminated, cancelled, declared void, or fails to become effective in accordance with its terms, the Parties shall proceed as follows:

   A.   This Agreement shall be deemed null and void and its terms and provisions shall have no further force or effect.

   B.   Neither this Agreement, nor any other related papers or orders, including the Term Sheet, may be cited to, used, or deemed admissible in any judicial administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

   C.   Litigation shall proceed without prejudice as if this Agreement had not been executed unless the Parties jointly agree to: (1) seek reconsideration or appellate review of the decision denying entry of Judgment, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement.

   D.   None of the Parties shall be deemed to have waived any claims, objections, defenses, or arguments.

   E.   Notwithstanding any other provision of this Agreement, no order of the Court, or modification or reversal on appeal of any order of the Court, reducing the amount of any attorneys' fees or costs to be paid to Class Counsel, or reducing the amount of any Service Payment, shall constitute grounds for cancellation or termination of the Agreement or grounds for limiting any other provision of the Judgment. Class Counsel retains and reserves all rights to appeal or seek reconsideration of any order of the Court reducing the amount of attorneys' fees or costs to be paid to Class Counsel and/or any order of the Court reducing the amount of any Service Payment. Defendants shall not oppose the appeal or motion for reconsideration so long as Class Counsel seeks an amount that does not exceed the amounts contemplated in

this Agreement.

F. If the Agreement is terminated after Class Notice is sent, notice shall be provided to Class Members informing them that the settlement was voided, and that as a result, no payments will be made and that Class Members, whether they submitted a Claim Form or not, retain all rights and privileges under the law, and that litigation in this action will continue. The notice may contain any additional information jointly agreed to by Class Counsel and Defendants' counsel, including but not limited to, an explanation of why the Agreement was terminated. Such notice shall be emailed and mailed via United States First Class Mail, postage prepaid, to the addresses contained on the Class List and/or to any Updated Address. Class Members whose settlement Notice was returned and for whom there is no Updated Address need not be sent the termination notice by mail. The costs associated with publication of the termination notice shall be borne by the party terminating this Agreement.

## 5. DISCOVERY

5.1 Nothing in this agreement is intended to limit the Parties' rights to any discovery, including oral depositions, in the event litigation in this action resumes for any reason set forth in this Agreement.

## 6. CONSIDERATION AND OTHER PAYMENTS

**6.1 Settlement Checks to Authorized Claimants.**

A. Each Authorized Claimant shall be entitled to receive an individually calculated payment in accordance with the following formula.

After deduction of the court-approved Costs and Fees, Service Award, and Settlement Administrators costs and fees, the Individual Gross Amount will be computed based on the number of hours worked by Class Members during the Relevant Period.

(a) Each Class Member's hours worked between July 27, 2016 and the May 28, 2024 shall be determined ("Numerator").

(b) To calculate each Class Member's proportionate share: (i) add all hours worked by Class Members together to obtain the "Total Denominator;" (ii) Divide the hours worked for each Class Member (the "Numerator") by the Total Denominator to obtain each Class Member's percentage of the Net Settlement Fund.

(c) Multiply each Class Member's percentage of the Net Settlement

        Fund by the Net Settlement Fund to determine each Class Member's Individual Gross Amount.

        (d)    The Total Denominator for every Class Member will be the same number. As a result of this calculation, the total of all Class Members' Numerators must equal the Total Denominator. Thus, the Class Member's individual hours worked divided by the sum of all hours worked for all Class Members, equals his/her Individual Gross Amount.

**B.**    Defendants' records shall be used to determine the number of eligible employment hours worked for each Authorized Claimant. In the event an Authorized Claimant disputes his or her employment data, the Parties shall cooperate and provide any evidence to support their respective positions to resolve the dispute. If the Parties are unable to resolve the dispute, the Parties will submit the dispute to Mediator Martin F. Scheinman whose decision will be binding.

**C.**    Subject to their right to terminate under section 4.2, Defendants shall pay the Final Net Settlement Amount in two installments. The first payment of Five Hundred Fifty Thousand Dollars ($550,000.00) shall be wire transferred to the QSF on or before thirty (30) days after the Court signs the Final Order approving the settlement, or May 1, 2026, whichever date is later. The balance of the Final Net Settlement Amount shall be wired transferred by Defendants to the QSF on or before December 1, 2026. If the Court signs the Final Order after December 1, 2026, Defendants shall pay the entire Final Net Settlement Amount on or before thirty (30) days after the Court signs the Final Order. Defendants shall be deemed in default of this Settlement Agreement in the event that either of the two installments is not made as set forth above. The Settlement Administrator shall notify the Parties in the event of a default. After receiving notification of the default, Defendants shall have 5 business days to cure, otherwise Plaintiffs may commence enforcement proceedings, inclusive of costs and fees associated therewith.

**D.**    The Settlement Administrator shall mail the Settlement Checks and Service Award, and shall wire transfer Class Counsels' approved costs and fees in two distributions. The first distribution shall be made within fourteen (14) days after Defendants pay the first installment as set forth in section C above. The second distribution shall be made within fourteen (14) days after Defendants pay the second installment as set forth in section C above. .

**E.**    Settlement Checks that remain uncashed 180 days after distribution shall be void, unless the Parties agree otherwise. Any uncashed Settlement Checks all amounts remaining in the QSF one hundred and eighty (180) days after the mailing of the last Settlement Checks will revert to Defendants. For purposes of this provision, the mailing date shall be deemed to be the date posted on the Settlement Checks.

**6.2**    **Service Award.**

    **A.**    In addition to her Individual Gross Amount, Named Plaintiff Laskowski shall

            receive a Service Award in the amount of $15,000.00 from the QSF.

      **B.**      The application for the Service Award is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the Litigation. The outcome of the Court's ruling on the application for the Service Award will not terminate this Agreement or otherwise affect the Court's ruling on the Application for Final Approval, Final Approval Order or the fairness or reasonableness of settlement. Defendants will not oppose Named Plaintiff's application for the Service Award. The Service Award provided for by this Section will only be paid after (1) the Court has granted Final Approval and (2) the Final Effective Date of the Settlement has passed.

**6.3**    **Settlement Amounts Payable as Attorneys' Fees and Costs.**

      **A.**      At the Fairness Hearing and in the Motion for Final Approval, Class Counsel shall petition the Court for an award of attorneys' fees and costs of in the amount of $700,000.00, to be paid from the QSF. Defendants shall not oppose such application, including any appeal or request for reconsideration if the application is denied or modified by the Court.

      **B.**      The substance of Class Counsel's application for attorneys' fees and costs is to be considered separately from the Court's consideration of the fairness, reasonableness, adequacy, and good faith of the settlement of the action. The outcome of any proceeding related to Class Counsel's application for attorneys' fees and costs shall not terminate this Agreement or otherwise affect the Court's ruling on the Motion for Final Approval. Class Counsel shall have the right to appeal the Court's determination with respect to their application for attorneys' fees and costs, which shall not be opposed by Defendants.

**6.4**    **Tax Characterization.**

      **A.**      The Settlement Administrator shall be responsible for making all reporting and filings with respect to amounts payable under this Agreement pursuant to any federal, state, or local tax law or regulation hereunder under the EIN of the QSF account.

      **B.**      For tax purposes, the payments to Authorized Claimants shall be allocated as follows: wages (50% of each settlement payment), liquidated damages (50% of each settlement payment).

      **C.**      The Settlement Administrator shall report wage payments to the respective payees and to the appropriate taxing authorities on an IRS Form W-2. This portion of the settlement payment shall be subject to applicable employment taxes and withholding taxes.

      **D.**      The Settlement Administrator shall report payments for liquidated damages without tax withholdings to the respective payees and to the appropriate taxing authorities on an IRS Form 1099.

    E.    The Settlement Administrator shall report payment of the Service Award without tax withholdings to the respective payees and to the appropriate taxing authorities on an IRS Form 1099.

    F.    The Settlement Administrator shall report payments of Costs and Fees without tax withholdings to Class Counsel and to the appropriate taxing authorities on an IRS Form 1099.

    G.    The Settlement Administrator shall also calculate all employer payroll taxes with respect to the wage payments made pursuant to this Agreement and file all necessary reports as required by law.

    H.    In the event that it is subsequently determined by any taxing authority that any payee owes any additional taxes with respect to any money distributed under this Agreement, it is expressly agreed that liability for such taxes rests exclusively with that payee, and that neither the Parties, nor Parties' Counsel, is responsible for the payment of such taxes, including any interest and penalties.

**6.5    RESERVE AMOUNT**

The Settlement Administrator shall set aside Twenty Thousand Dollars ($35,000.00) of the QSF as the Reserve Amount to cover any errors or omissions (e.g., individual employees who dispute the amounts allocated to them). Unless approved by the Parties, the Reserve Amount shall not be used to pay a settlement allocation to a Class Member whose name was not included by Defendants on the Class List. Such claim shall be paid by the Defendants. The Reserve Amount will remain in the QSF and any part of it remaining after any correctable errors or omissions are covered will revert to Defendants.

**7.    RELEASES**

    A.    **Release of Class Claims.** By operation of the entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, each Settlement Class Member who does not submit a timely and valid Opt-Out Statement pursuant to this Agreement, fully, finally and forever releases and dismisses with prejudice the Released Class Claims, regardless of whether such individual files a Claim Form.

    B.    **Release by Named Plaintiff.** By operation of entry of the Final Order, and except as to such rights or claims as may be created by this Agreement, Named Plaintiff forever and fully releases Released St. Camillus from the Released Authorized Claimant Claims, as well as any other claim of any kind under federal, state, or local law or common law based on events during the Relevant Period.

    C.    **Release by Authorized Claimants.** Each Authorized Claimant will specifically and affirmatively release Released St. Camillus from the Released Authorized Claimant Claims along with liquidated damages, interest and attorneys' fees and

Docusign Envelope ID: 34917007-A76C-4850-B846-F15C700B938C
Case 5:22-cv-00799-AJB-TWD   Document 88-2   Filed 08/29/25   Page 15 of 18

costs related to such claims, that were or could have been asserted in the Litigation, whether known or unknown, during the Relevant Period. Authorized Claimants will release their claims under the FLSA through the signature line on their Claim Form, which shall contain the following language:

*By signing this Claim Form, I consent to participate in this settlement against St. Camillus Nursing Home Company, Inc. and St. Camillus Residential Health Care Facility, both d/b/a St. Camillus Health and Rehabilitation Facility ("St. Camillus"), for alleged unpaid wages. I hereby release St. Camillus and its past, present, and future parents, subsidiaries, shareholders, insurers, officers, managers, owners, directors, employees, agents, attorneys, successors and assigns, in their individual and/or representative capacities from all wage and hour claims, including all applicable statutory, regulatory, and/or common law claims pertaining to the payment of wages, such as minimum and overtime wages, under the Fair Labor Standards Act and New York Labor Law, and damages and/or penalties related to wage notices under the New York Labor Law, that are related to, based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in this action between July 27, 2016 and May 28, 2024 and expressly release any such claims. I further understand that nothing in this release or my participation in this settlement shall in any way release or relinquish claims I may possess under the worker compensation law, for unemployment benefits, or arising in tort for personal injury. I further understand that this release shall be strictly limited to claims arising out of and in connection with my employment with St. Camillus. between July 27, 2016 and May 28, 2024.*

8.   **MISCELLANEOUS PROVISIONS**

8.1   **Cooperation Between the Parties; Further Acts.** The Parties shall reasonably cooperate with each other and shall use their reasonable best efforts to obtain the Court's approval of this Agreement and all of its terms. Each party, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement.

8.2   **Entire Agreement.** This Agreement constitutes the entire agreement between the Parties with regard to the subject matter contained herein, and all prior and contemporaneous negotiations and understandings between the Parties shall be deemed merged into this Agreement.

8.3   **Binding Effect.** This Agreement shall be binding upon the Parties and, with respect to Named Plaintiff and all Settlement Class Members, their representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns. Notwithstanding the passage of any legislation, bill, regulation, or other change in the law that may materially affect the rights of the Named Plaintiff and all Settlement Class Members in this Action, this agreement is binding.

8.4   **Arms' Length Transaction; Materiality of Terms.** The Parties have negotiated all the

terms and conditions of this Agreement at arms' length. All terms and conditions of this Agreement in the exact form set forth in this Agreement are material to this Agreement and have been relied upon by the Parties in entering into this Agreement, unless otherwise expressly stated.

**8.5** **Captions.** The captions or headings of the sections and paragraphs of this Agreement have been inserted for convenience of reference only and shall have no effect upon the construction or interpretation of any part of this Agreement.

**8.6** **Governing Law.** This Agreement shall in all respects be interpreted, enforced and governed by and under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

**8.7** **Continuing Jurisdiction.** The Court shall retain jurisdiction over the interpretation and implementation of this Agreement as well as any and all matters arising out of, or related to, the interpretation or implementation of this Agreement and of the settlement contemplated thereby.

**8.8** **Waivers, etc. to Be in Writing.** No waiver, modification or amendment of the terms of this Agreement, whether purportedly made before or after the Court's approval of this Agreement, shall be valid or binding unless in writing, signed by or on behalf of all Parties and then only to the extent set forth in such written waiver, modification or amendment, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Agreement, and such party, notwithstanding such failure, shall have the right thereafter to insist upon the specific performance of any and all of the provisions of this Agreement.

**8.9** **When Agreement Becomes Effective; Counterparts.** This Agreement shall become effective upon its full execution. The Parties may execute this Agreement in counterparts, and execution in counterparts shall have the same force and effect as if all Parties had signed the same instrument.

**8.10** **Facsimile and Email Signatures.** Any party may execute this Agreement by causing its counsel to sign on the designated signature block below and transmitting that signature page via facsimile or email to counsel for the other party. Any signature made and transmitted by facsimile or email for the purpose of executing this Agreement shall be deemed an original signature for purposes of this Agreement and shall be binding upon the party whose counsel transmits the signature page by facsimile or email.

**8.11** **Construction.** The determination of the terms and conditions of this Agreement has been by mutual agreement of the Parties. Each party participated jointly in the drafting of this Agreement, and therefore the terms and conditions of this Agreement are not intended to be, and shall not be, construed against any party by virtue of draftsmanship.

**8.12** **Consultation and Authority.** Class Counsel warrants and represents that they have

consulted with Named Plaintiff and have full authority to enter into this Agreement on behalf of the Named Plaintiff and the Settlement Class.

## WE AGREE TO THESE TERMS,

## NAMED PLAINTIFF

By: _____
        Tammy Laskowski

Dated: _____

## DEFENDANT ST. CAMILLUS

By: *Michael Schafer, MBA, LNHA, President/CEO*

Print Name: Michael Schafer, MBA, LNHA          Title: President & CEO

Dated: 08/22/2025 | 2:49 PM EDT

## VIRGINIA & AMBINDER, LLP

By: _____
        LaDonna Lusher

Dated: _____

## GATTUSO & CIOTOLI, PLLC

By: _____
        Frank Gattuso

Dated: _____

## BARCLAY DAMON

By: *Michael J. Murphy*
        Michael J. Murphy

Dated: 08/22/2025 | 1:34 PM EDT

**WE AGREE TO THESE TERMS,**

**NAMED PLAINTIFF**

By: *Tammy Laskowski* Tammy j laskowski (Aug 18, 2025 16:05:50 EDT)
Tammy Laskowski

Dated: 08/18/2025

**DEFENDANT ST. CAMILLUS**

By: _____

Print Name: _____  Title: _____

Dated: _____

**VIRGINIA & AMBINDER, LLP**

By: *LaDonna Lusher*
LaDonna Lusher

Dated: 08/28/2025

**GATTUSO & CIOTOLI, PLLC**

By: *Frank Gattuso*
Frank Gattuso

Dated: 08/18/2025

**BARCLAY DAMON**

By: _____
Michael J. Murphy

Dated: _____