UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAMMY LASKOWSKI, individually and on behalf of all other persons similarly situated who were employed by ST. CAMILLUS HEALTH AND REHABILITATION FACILITY and/or any other entities affiliated with or controlled by ST. CAMILLUS HEALTH AND REHABILITATION FACILITY, | Case No.: 22-cv-00799 |
| *Plaintiff,* | |
| -against- | |
| ST. CAMILLUS NURSING HOME COMPANY, INC. and ST. CAMILLUS RESIDENTIAL HEALTH CARE FACILITY, both d/b/a ST. CAMILLUS HEALTH AND REHABILITATION FACILITY, and any related entities, | |
| *Defendants.* | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT**

**VIRGINIA & AMBINDER, LLP**
LaDonna M. Lusher, Esq.
Alanna R. Sakovits, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
(212) 943-9080

-and-

**GATTUSO & CIOTOLI, PLLC**
Frank S. Gattuso
The White House
7030 E. Genesee Street
Fayetteville, New York 13066
(315) 314-8000

*Class Counsel*

i

## TABLE OF CONTENTS

PAGE

INTRODUCTION ...................................................................................................................1

I.     FACTUAL AND PROCEDURAL BACKGROUND...................................................1

     A.     General Facts ...................................................................................................1

     B.     Settlement Negotiations ...................................................................................2

II.     SUMMARY OF THE SETTLEMENT TERMS ......................................................3

     A.     The Settlement Fund .......................................................................................3

     B.     Eligible Claimants...........................................................................................4

     C.     Releases...........................................................................................................4

     D.     Allocation Formula .........................................................................................4

     E.     Attorneys' Fees, Litigation Costs, and Service Awards .........................................5

     F.     Payment of the Final Settlement Amount .................................................................5

III.     CLASS ACTION SETTLEMENT PROCEDURE ....................................................6

IV.     PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE ...........6

     A.     The Settlement is Fair, Reasonable, and Adequate................................................8

             1.     Litigation Through Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1) ....................................................................................9

             2.     The Reaction of the Class Has Been Positive (*Grinnell* Factor 2) ...................9

             3.     Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3) ............................................................9

             4.     Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5) .........................................................................................................10

             5.     Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6) ..10

6.   Defendant's Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7) ..........................................................................................10

7.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9) ..10

V.     THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE.....12

CONCLUSION........................................................................................................................14

## TABLE OF AUTHORITIES

<u>CASES</u>                                                                                    <u>PAGE</u>

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2nd Cir. 1974)................................................................. *passim*

*Clark v. Ecolab Inc.*,
2009 WL 6615729 (S.D.N.Y. Nov. 27, 2009) ...............................................7

*deMunecas v. Bold Food*,
2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) ...............................................7

*Dorn v. Eddington Sec. Inc.*,
No. 08 Civ. 10271, 2011 WL 382200 (S.D.N.Y. Jan. 21, 2011).....................10

*Goldberger v. Integrated Res. Inc.*,
209 F.3d 43 (2nd Cir. 2000).......................................................................8

*Frank v. Eastman Kodak Co.*,
228 F.R.D. 174 (W.D.N.Y. 2005)........................................................ 10-13

*Hernandez v. Immortal Rise, Inc.*,
2012 WL 5862749, at *1 (E.D.N.Y 2013)....................................................7

*In re Austrian & German Bank Holocaust Litig.*,
80 F.Supp.2d 164 (S.D.N.Y. 2000); *aff'd* 236 F.3d 78 (2nd Cir. 2001)..................9, 11

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
2007 WL 2230177 (S.D.N.Y. July 27, 2007) ...............................................8

*In re Ira Haupt & Co.*,
304 F.Supp. 917 (S.D.N.Y. 1969) ..............................................................10

*In re Michael Milken & Assocs. Sec. Litig.*,
150 F.R.D. 57 (S.D.N.Y. 1993) ..................................................................13

*In re Painewebber Ltd. P'ships Litig.*,
171 F.R.D. 104 (S.D.N.Y. 1997) ................................................................10

*In re Traffic Exec. Ass'n E. R.R.s..*,
627 F.2d 631 (2nd Cir. 1980).......................................................................7

*In re Warfarin Sodium Antitrust Litigation.*,
391 F.3d 516 (3rd Cir. 2004) ..................................................................7, 10

*Joel A v. Giuliani*,
218 F.3d 132 (2nd Cir. 2000)................................................................................12

*Johnson v. Brennan*,
No. 10 Civ. 4712, 2011 WL 4357376, at *21 (S.D.N.Y. Sept. 16, 2011) .....................................13

*Maywalt v. Parker & Parsley Petroleum Co.*,
67 F.3d 1072 (2nd Cir. 1995)................................................................................7

*Officers for Justice v. Civil Serv. Comm'n*,
688 F.2d 615 (9th Cir. 1982) ................................................................................12

*Palacio v. E*TRADE Fin. Corp.*,
No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012)........................................7

*Reyes v. Altamarea Group, LLC*,
No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011)....................................................7

*Velez v. Majik Cleaning Service, Inc.*,
2007 WL 7232783 (S.D.N.Y. June 25, 2007) ..............................................................10

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
396 F.3d 96, 116 (2nd Cir. 2005)...............................................................................6

## STATUTES

Fed. R. Civ. Pro. 23............................................................................................*passim*

29 U.S.C. § 206 .................................................................................................1

29 U.S.C. § 207 .................................................................................................1

29 U.S.C. § 216(b) .............................................................................................1

NYLL § 190 .....................................................................................................1

NYLL § 663 .....................................................................................................1

NYLL § 663 .....................................................................................................1

12 NYCRR § 137-1.2 .........................................................................................1

12 NYCRR § 142-2.2 .........................................................................................1

12 NYCRR § 137-1.3 .........................................................................................1

iv

## <u>INTRODUCTION</u>

Subject to this Court's approval, Named Plaintiff Tammy Laskowski ("Named Plaintiff"), individually and on behalf of all other persons similarly situated who comprise the "Class" (as hereinafter defined and collectively referred to as "Class" or "Plaintiffs") and St. Camillus Nursing Home Company, Inc. and St. Camillus Residential Health Care Facility, both d/b/a St. Camillus Health and Rehabilitation Facility (together "Defendants" or "St. Camillus") (Named Plaintiff and Defendants, singularly "Party" and collectively, the "Parties") have settled this wage and hour class and collective action. The proposed settlement satisfies all of the criteria for preliminary approval. Plaintiffs respectfully request that the Court (1) grant preliminary approval of the Settlement Agreement and Release (the "Settlement Agreement" or "Agreement"), (2) approve the Proposed Notice of Settlement of Class and Collective Action Lawsuit and Proposed Claim Form; and (3) authorize Counsel for the Parties to effectuate the settlement process, and (4) provide such other and further relief as the Court may deem just and proper. Defendants do not oppose this motion.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  <u>General Facts</u>

Named Plaintiff filed this certified class and collective action on July 27, 2022 pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 206, 207, and 216(b); New York Labor Law ("NYLL") § 190 *et seq.*, NYLL §§ 650 *et seq.* and 663; 12 New York Codes, Rules and Regulations ("NYCRR") §§ 137-1.2 and 137-1.3. Named Plaintiff sought to recover wages and overtime compensation, as well as related damages, allegedly owed to Named Plaintiff and all similarly situated employees who worked for Defendants as Licensed Practical Nurses, Nursing Assistants, Patient Care Assistants, Registered Nurses and other employees performing similar

direct nursing and personal care support in furtherance of Defendants' operations as a medical facility. [*See generally*, Dkt. No. 1, Plaintiffs' Complaint].

Defendants employed Named Plaintiff as a Licensed Practical Nurse from approximately September 2015 to January 2017, and again from approximately August 2017 to October 9, 2020. Plaintiffs allege they were regularly required to perform work for Defendants without receiving pay for all hours worked and overtime compensation, as required by applicable federal and state law. [*Id.*] Specifically, Plaintiffs allege that Defendants automatically deducted a one-half hour meal break from their pay when they worked shifts of at least six hours, even though they assert that they were unable to take a full or even partial meal break during their shifts. [*Id.*] Plaintiffs maintain that, in certain weeks, the deducted one-half hour of pay would cause them not to receive overtime compensation for all hours worked after forty (40) in a week. [*Id.*]

On September 10, 2024, this Court granted class certification and certified a class of "all current and former employees of St. Camillus Health and Rehabilitation Facility who worked as Licensed Practical Nurses, Nursing Assistants, Personal Care Assistants, Registered Nurses and other personal care support employees in the state of New York from July 27, 2016 to the present." The Court also certified a collective action under the FLSA consisting of the same individuals from July 27, 2019 through the present. *Laskowski v. St. Camillus Nursing Home Co., Inc.*, 2024 U.S. Dist. LEXIS 162934, at *25 (N.D.N.Y. Sept. 10, 2024).

## B. Settlement Negotiations

Plaintiffs and their counsel reviewed Defendants' voluminous document production which included, *inter alia*, time and payroll records and exception sheets[1] for the Class, conducted an independent audit of the records produced to perform damage calculations and assess the extent of

---

[1] In addition to the use of an electronic timekeeping system, St. Camillus implemented bi-weekly paper exception sheets for employees to record variations to their timesheets.

Defendants' liability, along with defenses raised by Defendants to the claims asserted. [*See* the Declaration of LaDonna M. Lusher (the "Lusher Declaration") ¶ 4.] Plaintiffs' Counsel conducted an in-depth investigation of Defendants' business, financial condition, and has also communicated with Class Members to ascertain the nature of their respective claims. [*Id.*] More importantly, there has been extensive negotiations and exchange of discovery, including the production and review of extensive payroll and time records which constituted punch-in and punch-out records; compensation data; and shift schedule data for approximately fifty-one thousand two hundred seventy five (51,275) individual worker-days. [*Id.*] Plaintiffs' counsel's in-house accounting team produced detailed damage calculations based on the data provided, and extrapolations based on the estimated size of the class, along with reviewing detailed documentation produced by Defendants regarding its potential defenses, and held detailed discussions regarding the merits of Plaintiffs' claims and Defendants' defenses. [*Id.*] Plaintiffs' Counsel also conducted legal research on the underlying merits of the class claims, the likelihood of obtaining liquidated damages, the proper measure of damages, Defendants' likely affirmative defenses, and their ability to withstand judgment. [*Id.* ¶ 5.]

After engaging in litigation, the parties attended mediation on January 24, 2024 for both this action and a separate but related discrimination action brought by Named Plaintiff Laskowski against Defendants before Mediator Randolph F. Treece. [*Id.* ¶ 6.] However, this matter was not resolved at that time. [*Id.*] The parties continued with litigation and motion practice. [*Id.*] Thereafter, the parties elected to mediate this matter again before Mediator Martin Scheinman on March 10, 2025 and May 9, 2025. [*Id.*] After extensive negotiations and multiple rounds of exchanging documents and analysis, a settlement was reached. [*Id.*]

## II.    SUMMARY OF THE SETTLEMENT TERMS

**A.  <u>The Settlement Fund</u>**

The Settlement Agreement creates a Gross Settlement Fund of Two Million Four Hundred Thousand dollars ($2,400,000.00) (the "Fund"), which Defendants have agreed to pay to settle the Litigation as set forth in this Agreement. [Lusher Decl. Ex. "A" ¶ 1.36].  The Fund covers awards to Authorized Claimants, Court-awarded attorneys' fees and costs, a Service Award to Named Plaintiff and a Reserve Fund.  Professional fees and costs will be no more than 29.2% of the Gross Settlement Fund, for a total maximum in fees and costs, of no more than Seven Hundred Thousand Dollars ($700,000.00). [Lusher Decl. Ex. "A" ¶¶ 1.8, 6.3(A)].

**B.  <u>Eligible Claimants</u>**

Eligible claimants include all Class Members defined as "All current and former employees of St. Camillus Health and Rehabilitation Facility who worked as Licensed Practical Nurses, Nursing Assistants, Personal Care Assistants, Registered Nurses and other personal care support employees in the state of New York between July 27, 2016 and May 28, 2024. [Lusher Decl. Ex. "A" ¶ 1.35].

**C.  <u>Releases</u>**

Each Class Member who does not timely opt-out of the settlement shall release Defendants from any and all wage and hour claims under New York State law or Federal law that are based upon or arise out of the facts, acts, transactions, occurrences, events, or omissions alleged in this action, through May 28, 2024. This release shall be strictly limited to claims arising out of and in connection with an Authorized Claimant's employment with Defendants during the Relevant Period. [Lusher Decl. Ex. "A" ¶ 1.26].

**D.  <u>Allocation Formula</u>**

4

Each Authorized Claimant who timely files a completed Claim Form and W-9 Form will be eligible to receive a Settlement Check based on the following formula. After deduction of the Court-approved costs and fees, the service award for the Class Representative, the Settlement Administrator's costs and fees, and the Reserve Fund, the Individual Gross Amount will be computed based on the number of hours worked by Class Members during the Relevant Period.

     (a)    Each Class Member's hours worked between July 27, 2016 and May 28, 2024, shall be determined ("Numerator").

     (b)    Add all hours worked by Class Members together to obtain the "Total Denominator;"

     (c)    Divide the hours worked for each Class Member (the "Numerator") by the Total Denominator to obtain each Class Member's percentage of the Net Settlement Fund.

     (d)    Multiply each Class Member's percentage by the Net Settlement Fund to determine each Class Member's Individual Gross Amount.

[Lusher Decl. Ex. "A" ¶¶ 1.2, 6.1(A)].

### E. Attorneys' Fees, Litigation Costs, and Service Award

At the Fairness Hearing, Class Counsel will petition the Court for an award of no more than 29.2% of the Gross Settlement Fund ($700,000.00) which shall include professional fees and costs. Plaintiffs' Counsel will move for attorneys' fees and costs along with their Motion for Final Approval of the Settlement. Plaintiffs will also apply for a service and/or enhancement award in the amount of Fifteen Thousand Dollars ($15,000) for Named Plaintiff in recognition of the services she rendered on behalf of the class ("Service Award"). The Court need not rule on the proposed attorneys' fees award or service award now. Plaintiffs will file separate motions asking the Court to approve them simultaneously with Plaintiffs' Motion for Final Approval of the Settlement. Defendants do not oppose the proposed attorneys' fees award or the service awards.

[Lusher Decl. Ex. "A" ¶ 6.3].

### F. __Payment of the Final Settlement Amount__

Defendants shall pay the final settlement amount in two installments. [Lusher Decl. Ex. "A" ¶ 6.1(C)]. The first payment of Five Hundred Fifty Thousand Dollars ($550,000.00) shall be paid on or before thirty (30) days after the Court signs the Final Order approving the settlement, or May 1, 2026, whichever date is later. *Id*. The balance of the final settlement amount shall be paid on or before December 1, 2026. *Id*. If the Court signs the Final Order after December 1, 2026, Defendants shall pay the entire settlement amount on or before thirty (30) days after the Court signs the Final Order. *Id*. The first distribution of settlement payments shall be made within fourteen (14) days after Defendants pay the first installment. The second distribution shall be made within fourteen (14) days after Defendants pay the second installment. [Lusher Decl. Ex. "A" ¶ 6.1(D)].

### III.    **CLASS ACTION SETTLEMENT PROCEDURE**

The well-defined class action settlement procedure includes three distinct steps:

1.  Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2.  Dissemination of mailed and/or published notice of settlement to all affected class members; and

3.  A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions* ("*Newberg*"), §§ 11.22, *et seq.* (4th ed. 2002). Plaintiffs request that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving the Proposed Notice and Claim Form which has been approved by all parties, and authorizing Plaintiffs to publish the Notice and Claim Form to Class Members, in accordance with the Settlement Agreement.

## IV.    PRELIMINARY APPROVAL OF THE SETTLEMENT IS APPROPRIATE

The law favors compromise and settlement of class action suits.  *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005) (noting the "strong judicial policy in favor of settlements, particularly in the class action context") (internal quotation marks and citation omitted); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."); *see also Newberg* § 11.41 ("The compromise of complex litigation is encouraged by the courts and favored by public policy.").

The approval of a proposed class action settlement is a matter of discretion.  *See Maywalt v. Parker & Parsley Petroleum Co*., 67 F.3d 1072, 1079 (2d Cir. 1995).  "[C]ourts should give proper deference to the private consensual decision of the parties . . . [and] should keep in mind the unique ability of class and defense counsel to assess the potential risks and rewards of litigation . . . ."  *Clark v. Ecolab Inc.*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (internal quotation marks and citations omitted).

Preliminary approval requires only an "initial evaluation" of the fairness of the proposed settlement on the basis of written submissions and an informal presentation by the settling parties.  *Clark*, 2009 WL 6615729, at *3 (S.D.N.Y. Nov. 27, 2009) (citing *Newberg* § 11.25).  To grant preliminary approval, the court need only find that there is "'probable cause' to submit the [settlement] to class members and hold a full-scale hearing as to its fairness."  *In re Traffic Exec. Ass'n E. R.Rs.*, 627 F.2d 631, 634 (2d Cir. 1980); *Newberg* § 11.25 (noting that "[i]f the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness . . . and appears to fall within the range of possible approval," the court should permit notice of the

settlement to be sent to class members) (quoting *Manual for Complex Litigation* (Third) § 30.41).[2]

"Fairness is determined upon review of both the terms of the settlement agreement and the negotiating process that led to such agreement." *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 184 (W.D.N.Y. 2005). "Absent fraud or collusion, [courts] should be hesitant to substitute [their] judgment for that of the parties who negotiated the settlement." *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007). Preliminary approval is the first step in the settlement process. It simply allows notice to issue and for Class Members to join in the settlement, object or opt out of the settlement. After the notice period, the Court will be able to evaluate the settlement with the benefit of Class Members' input.

### A.    The Settlement is Fair, Reasonable, and Adequate

In evaluating a class action settlement, courts in the Second Circuit generally consider the nine factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000) ("*Grinnell*"). Although the Court's task on a motion for preliminary approval is merely to perform an "initial evaluation," *Newberg* § 11.25, to determine whether the settlement falls within the range of possible final approval, or "the range of reasonableness," *id*. at § 11.26, it is useful for the Court to consider the criteria on which it will ultimately judge the settlement.

The *Grinnell* factors are (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages;

---

[2] Courts often grant preliminary settlement approval without requiring a hearing or a court appearance. *See, e.g.*, *Hernandez v. Immortal Rise, Inc.*, 2012 WL 5862749, at *1 (E.D.N.Y 2013) (granting preliminary approval based on plaintiffs' memorandum of law, attorney declaration, and exhibits); *Palacio v. E\*TRADE Fin. Corp.*, No. 10 Civ. 4030, 2012 WL 1058409, at *1 (S.D.N.Y. Mar. 12, 2012) (same); *Reyes v. Altamarea Grp., LLC*, No. 10 Civ. 6451, 2011 WL 4599773 (S.D.N.Y. June 3, 2011) (same); *deMunecas v. Bold Food*, No. 09 Civ. 00440, 2010 U.S. Dist. LEXIS 87644 (S.D.N.Y 2010) (same).

(6) the risks of maintaining the class action through the trial;  (7) the ability of the defendant to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. *Grinnell*, 495 F.2d at 463. These factors all weigh in favor of approving the Settlement Agreement, and certainly preliminary approval.

### 1.    <u>Litigation and Trial Would be Complex, Costly, and Long (*Grinnell* Factor 1)</u>

By reaching a favorable settlement prior to dispositive motions or trial, Plaintiffs seek to avoid significant expense and delay, and instead ensure recovery for the class while the Defendants are still able to afford to do so.  "Most class actions are inherently complex and settlement avoids the costs, delays and multitude of other problems associated with them."  *In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 174 (S.D.N.Y. 2000), *aff'd sub nom. D'Amato v. Deutsche Bank*, 236 F.3d 78 (2d Cir. 2001).  This case is no exception, with approximately 1,130 Class and Collective Members.

Further litigation, including full class-wide discovery and the filing of motions for summary judgment, would cause additional expense and delay. If the Court denied the motions, a fact-intensive trial would necessarily follow.  A trial would be lengthy and complex and would consume tremendous time and resources for the parties and the Court.  The settlement, on the other hand, makes monetary relief available to Class Members in a prompt and efficient manner. Therefore, the first *Grinnell* factor weighs in favor of approval.

### 2.    <u>The Reaction of the Class Has Been Positive (*Grinnell* Factor 2)</u>

Notice of the settlement and its details has not yet been issued to the Class.  The Court should more fully analyze this factor after notice issues and Class Members are given the opportunity to opt out or object.  At this early stage in the process, Named Plaintiff has expressed

approval of the settlement.

### 3. Discovery Has Advanced Far Enough to Allow the Parties to Resolve the Case Responsibly (*Grinnell* Factor 3)

The parties have completed enough discovery to recommend settlement. The proper question is "whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 537.

The parties' discovery here easily meets this standard. Plaintiffs' Counsel conducted an in-depth investigation of Defendant's extensive production of payroll records and time records, which constituted punch-in and punch-out records; compensation data; and shift schedule data for approximately fifty-one thousand two hundred seventy five (51,275) individual worker-days. Plaintiffs' counsel's in-house accounting team produced detailed damage calculations based on the data provided, and extrapolations based on the estimated size of the class, along with reviewing detailed documentation produced by Defendants regarding its potential defenses, and held detailed discussions regarding the merits of Plaintiffs' claims and Defendants' defenses. These factors favor preliminary approval. *See Dorn v. Eddington Sec., Inc.*, No. 08 Civ. 10271, 2011 WL 382200, at *3 (S.D.N.Y. Jan. 21, 2011) (finding that "Plaintiff's Counsel did substantial work identifying, investigating, prosecuting, and settling Plaintiff's and the class members' claims.").

### 4. Plaintiffs Would Face Real Risks if the Case Proceeded (*Grinnell* Factors 4 and 5)

Although Plaintiffs' Counsel believe their case is strong, as with all litigation, it is subject to considerable risk. "Litigation inherently involves risks." *In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997). Indeed, "[i]f settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome." *In re Ira Haupt & Co.*, 304 F. Supp. 917, 934 (S.D.N.Y. 1969); *see also Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698,

2007 WL 7232783, at *6 (S.D.N.Y. June 25, 2007).  A trial on the merits would involve significant risks for Plaintiffs. The Class is comprised of approximately 1,130 individuals, and Defendants have argued that they have individual defenses regarding individual class members or subcategories of the Class.  While Plaintiffs' Counsel believes that they could ultimately establish both liability and damages, Plaintiffs' Counsel are experienced and realistic, and understand that the resolution of liability issues, the outcome of the trial, and the inevitable appeals process are inherently uncertain in terms of outcome and duration.  The proposed settlement alleviates these uncertainties.  This factor therefore weighs in favor of approval.

**5.   Risks Involved in Maintaining the Class Through Trial (*Grinnell* Factor 6)**

The risk of maintaining the class through trial is also present. In the absence of a settlement, Defendants would vigorously oppose Plaintiffs' claims.  If Defendants were successful, class members could receive no compensation at all.

**6.   Defendants' Ability to Withstand a Greater Judgment is Not Determinative (*Grinnell* Factor 7)**

Defendants' viability and financial position were a matter of great consideration during settlement discussions and at mediation. Thus, it is questionable whether Defendants could withstand a greater judgment. *Frank*, 228 F.R.D. at 186. Thus, this factor weighs in favor of granting preliminary approval.

**7.   The Settlement Fund is Substantial, Even in Light of the Best Possible Recovery and the Attendant Risks of Litigation (*Grinnell* Factors 8 and 9)**

Defendants have agreed to settle this case for a substantial sum. The Gross Settlement Amount of $2,400,000.00 represents substantial value given the attendant risks of litigation. The determination of whether a settlement amount is reasonable "does not involve the use of a 'mathematical equation yielding a particularized sum.'" *Frank*, 228 F.R.D. at 186 (quoting *In re*

*Austrian & German Bank Holocaust Litig.,* 80 F. Supp. 2d at 178). "Instead, 'there is a range of reasonableness with respect to a settlement – a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'" *Id.* (quoting *Newman v. Stein*, 464 F.2d 689, 693 (2d Cir. 1972)). "[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery." *Grinnell Corp.*, 495 F.2d at 455 n.2. "It is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not *per se* render the settlement inadequate or unfair." *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 628 (9th Cir. 1982) (emphasis added).

Here, each Authorized Claimant will receive a substantial proportion of the wages they are allegedly owed. Weighing the benefits of the settlement against the available evidence and the risks associated with proceeding in the litigation, the settlement amount is reasonable.

The *Grinnell* factors weigh in favor of issuing preliminary approval of the settlement. In the event that a substantial number of objectors come forward with meritorious objections, the Court can reevaluate its determination. Because the settlement, on its face, is "'fair, adequate, and reasonable, and not a product of collusion,'" *Frank*, 228 F.R.D. at 184 (quoting *Joel A. v. Giuliani*, 218 F.3d 132, 138-39 (2d Cir. 2000)), the Court should grant preliminary approval.

## V.    THE NOTICE PLAN AND DISTRIBUTION PROCESS ARE APPROPRIATE

The Proposed Notice, attached to the Lusher Declaration as Exhibit "B", complies with due process and Federal Rule of Civil Procedure 23. Notice must provide the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort. The notice must clearly and concisely state in plain, easily understood language:

    (i)      the nature of the action;

    (ii)     the definition of the class certified;

    (iii)    the class claims, issues, or defenses;

    (iv)    that a class member may enter an appearance through an attorney if the member so desires;

    (v)     that the court will exclude from the class any member who requests exclusion;

    (vi)    the time and manner for requesting exclusion; and

    (vii)   the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B).

The Proposed Notice satisfies each of these requirements. It describes the terms of the settlement, informs the class about the allocation of attorneys' fees, and provides specific information regarding the date, time, and place of the final approval hearing, provides specific information on how to object or opt-out of the action, and informs the class of any claims they will be releasing should they remain in the class. Courts have approved class notices even when they provided only general information about a settlement. *See In re Michael Milken & Assocs. Sec. Litig.*, 150 F.R.D. 57, 60 (S.D.N.Y. 1993) (class notice "need only describe the terms of the settlement generally"); *see also Johnson,* No. 10 Civ. 4712, 2011 WL 4357376 at *3. The detailed information in the Proposed Notices far exceeds this bare minimum and fully complies with the requirements of Rule 23(c)(2)(B).

The Settlement Agreement provides that the Notice will be distributed by the Settlement Administrator via e-mail and United States First Class Mail (postage prepaid) to the last known address of each Class Member within thirty (30) days of the entry of the Preliminary Approval Order by the court. [Lusher Decl. Ex. "A", ¶ 2.2(B)]. In the event that, subsequent to the first mailing of the Notice and Claim Form and prior to the Claim Form Deadline, a Notice is returned to the Settlement Administrator with no forwarding address, the Settlement Administrator shall perform a standard skip trace in an effort to ascertain the Updated Address for the Settlement Class

Member in question. [Lusher Decl. Ex. "A", ¶ 2.2(D)]. The Notice contains information about how to participate as well as how to exclude oneself or object to the settlement. Class Members will have sixty (60) days after the Notice is mailed to file a claim or to opt out of the settlement. [Lusher Decl. Ex. "A" ¶¶ 1.3, 2.3(A), 2.4(A)].

## <u>CONCLUSION</u>

For the reasons set forth above, Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval of Settlement and enter the Proposed Order.

Dated: New York, New York
      August 29, 2025

VIRGINIA & AMBINDER, LLP

       /s/
_____
LaDonna M. Lusher, Esq.
Alanna R. Sakovits, Esq.
40 Broad Street, 7th Floor
New York, New York 10004
Tel:   (212) 943-9080
llusher@vandallp.com
asakovits@vandallp.com

_/s/ Frank S. Gattuso_____
Frank S. Gattuso
GATTUSO & CIOTOLI, PLLC
The White House
7030 E. Genesee Street Fayetteville,
New York 13066
(315) 314-8000
fgattuso@gclawoffice.com

_Class Counsel_

14